IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KATRINA MICHELLE BANKS,

        Plaintiff,

v.                                                                                  Civil Action No. 2:16cv542

TAKKT AMERICAN HOLDING, INC. et al.,

        Defendants.

## OPINION & ORDER

This matter is before the Court pursuant to four (4) Motions to Dismiss. For clarification purposes, the Parties to this action are as follows: Plaintiff Katrina M. Banks ("Plaintiff"), Defendant and Crossclaim Plaintiff Hubert Company, LLC ("Hubert"),[1] Defendant and Crossclaim Defendant Barclay Trading, LLC ("Barclay"), Defendant and Crossclaim Defendant Placetech Co., Ltd. ("Placetech"), Defendant and Crossclaim Defendant Prospace International Co., Ltd. ("Prospace"), Defendant and Crossclaim Defendant Protrend Co., Ltd. ("Protrend"), Defendant and Crossclaim Defendant Protrend Living Co., Ltd. ("Protrend Living"), and Defendant and Crossclaim Defendant Protrend Metal & Plastic Co., Ltd ("Protrend Metal & Plastic").[2] For ease of reference, the Court will refer to Prospace, Protrend, Protrend Living, and Protrend Metal & Plastic collectively as "Protrend Group."

Plaintiff commenced this personal injury action against Hubert and Barclay in state court on July 25, 2016. Doc. 1, Ex. A. Hubert removed the case to this Court on September 13, 2016. Doc. 1. Barclay filed a Third Party Complaint against Placetech and Protrend Group on

---

[1] Hubert notes in its Notice of Removal, Doc. 1, that it was improperly named in the original Complaint as Takkt America Holding, Inc. d/b/a Hubert Company, LLC. The Court will refer to this entity as Hubert.
[2] Protrend Metal & Plastic has yet to make an appearance in this case.

1

September 30, 2016. Doc. 10. On January 25, 2017, Plaintiff was given leave to add Placetech and Protrend Group as Defendants and to file an amended complaint. Doc. 17. After Plaintiff filed her Amended Complaint, Doc. 18, Hubert filed a Crossclaim against Barclay, Doc. 21, and a separate Crossclaim against Placetech and Protrend Group, Doc. 22. Placetech and Protrend Group[3] then filed the four (4) Motions to Dismiss at issue here:

1. Placetech's Motion to Dismiss for Lack of Personal Jurisdiction as to Plaintiff's Amended Complaint, Doc. 39;

2. Placetech's Motion to Dismiss for Lack of Personal Jurisdiction as to Hubert's Crossclaim, Doc. 47;

3. Protrend Group's Motion to Dismiss for Lack of Personal Jurisdiction as to Plaintiff's Amended Complaint, Doc. 42; and

4. Protrend Group's Motion to Dismiss for Lack of Personal Jurisdiction as to Hubert's Crossclaim, Doc. 49.

For the reasons set forth herein, the Court **FINDS** that this Court has personal jurisdiction over Defendants Placetech and Protrend Group. Accordingly, the Court **DENIES** all four (4) Motions to Dismiss.

## I.   BACKGROUND

### A.   Factual Allegations

This action arises out of an accident during which one of the casters on a linen cart operated by Plaintiff broke, causing the cart to fall on top of and injure Plaintiff. Doc. 18 ¶¶ 22–23. Plaintiff states that upon information and belief the cart was manufactured by one or more of Placetech and the Protrend Group, id. ¶ 15, although the cart manufacturer has not been

---

[3] The filings referenced here as made by Protrend Group do not include Protrend Metal & Plastic, as this entity has not yet made an appearance in this action.

definitively identified, see Doc. 40 at 3. Plaintiff alleges that after manufacture, the cart was distributed through Barclay, purchased by Hubert, and subsequently sold to Plaintiff's employer, Aramark/Old Dominion University ("Aramark"). Compl. ¶¶ 16–18.

**B.    Procedural History**

Plaintiff filed a Complaint against Hubert and Barclay in state court on July 25, 2016. Doc. 1, Ex. A. On September 12, 2016, Hubert filed its Answer as well as a Crossclaim against Barclay. Docs. 2, 4. Hubert removed the case to this Court on September 13, 2016. Doc. 1. Barclay filed its Answer to the Complaint and Consent to Removal on September 16, 2016. Docs. 6, 8. Barclay filed a Third Party Complaint against Placetech and Protrend Group on September 30, 2016. Doc. 10. Barclay filed its Answer to Hubert's Crossclaim, Doc. 4, on November 22, 2016. Doc. 12. On January 25, 2017, Plaintiff was given leave to add Placetech and Protrend Group as Defendants and to file an Amended Complaint. Docs. 17, 18. Barclay filed an Answer to Plaintiff's Amended Complaint on February 13, 2017. Doc. 19. On February 14, 2017, Hubert filed an Answer to the Amended Complaint, Doc. 20, a Crossclaim against Barclay, Doc. 21, and a separate Crossclaim against Placetech and Protrend Group, Doc. 22. Barclay filed an Answer to Hubert's Crossclaim, Doc. 21, on February 21, 2017. Doc. 23.

On June 8, 2017, Placetech and Protrend Group each filed a Motion to Dismiss for Lack of Personal Jurisdiction as to the Amended Complaint. Docs. 39 (Placetech), 42 (Protrend Group). On June 12, 2017, Placetech and Protrend Group each filed a Motion to Dismiss for Lack of Personal Jurisdiction as to Hubert's Crossclaim, Doc. 21. Docs. 47 (Placetech), 49 (Protrend Group). On June 22, 2017, Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss, regarding both Placetech's and Protrend Group's Motions to Dismiss the Amended Complaint. Doc. 51. Placetech and Protrend Group each filed a Reply to

Plaintiff's Response on June 28, 2017. Docs. 52 (Placetech), 53 (Protrend Group). Hubert did not file a response to either Motion to Dismiss its Crossclaim, Docs. 47, 49.

C.  **Jurisdictional Facts**

Plaintiff directs her jurisdictional argument at Placetech only, as Placetech "appears to be the correct defendant." Doc. 51 at 3 n.3. However, Plaintiff "contends that the arguments against other members of the Protrend Group would be similar, and jurisdiction would be proper against any of the Protrend Group defendants who actually manufactured the Cart."[4] Id.

Plaintiff observes from publicly available data that Placetech has made 281 shipments into the United States since the beginning of 2015, including a small number of shipments into Norfolk, VA. See id., Exs. B, E, F, G. Plaintiff alleges that "Placetech's most frequent customer during this time appears to be LG Sourcing, Inc.[,] a wholly owned subsidiary of Lowe's." Id. at 3. Lowe's is a large retailer with 10 stores in the Hampton Roads region of Virginia. Id.

Plaintiff also notes that the Protrend Group (which Plaintiff alleges encompasses Placetech) "operates a website accessible in Virginia." Id. at 4. The website allows Virginians to "find information about Protrend Group's products" and "to contact Protrend Group for more information." Id. The website displays a graphic announcing that 45% of Protrend Group's business comes from "America" and invokes Protrend Group's relationships with major American retailers such as Lowe's, Home Depot, Wal-Mart, Target, Sears, Sam's Club, and Costco. Id.; see Ex. N. The News Release page of the website "indicates that [Protrend Group] participated in the International Home + Housewares Show in Chicago in 2016." Id.; see Ex. M.

---

[4] In the same way that arguments for exercising personal jurisdiction apply similarly to both Placetech and the Protrend Group, arguments against exercising personal jurisdiction apply equally well to both. Nor does the analysis change for the jurisdictional challenge to Hubert's Crossclaim. Accordingly, although the following analysis will focus on the Parties' arguments regarding Placetech and Plaintiff's Amended Complaint, the findings and conclusions drawn from such analysis may be applied to all four (4) Motions to Dismiss.

It appears to be the position of Placetech and Protrend Group that if any of the Defendants who are parties to the Motions to Dismiss had any contact with the product at issue, it would be Placetech. See Doc. 40 at 3–4; Doc. 43 at 2–4. Placetech states that upon information and belief, the casters were manufactured by Protrend Metal & Plastic. Doc. 40 at 3–4. Placetech contends that any contact it had with the product was limited to selling and delivering the casters from Protrend Metal & Plastic to VNI, LLC, for subsequent shipment to Hubert in Harrison, Ohio. Id. Placetech "did not enter into any contract to supply such products to anyone in Virginia," "communicate with Hubert, . . . Aramark, or Plaintiff regarding the product at issue prior to the incident," or "perform any activities in Virginia with respect to the product." Id. at 4.

Placetech and Protrend Group further assert that they maintain only a passive website that is neither specific to the United States nor one through which customers in the United States can directly purchase any product. See Doc. 52 at 9; Doc. 43 at 3–4.

## II. LEGAL STANDARDS

### A. Rule 12(b)(2)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff ultimately bears the burden of proving grounds for personal jurisdiction by a preponderance of the evidence. See Grayson v. Anderson, 816 F.3d 262, 269 (4th Cir. 2016); Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). However, where the court decides the issue "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint," without a hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive" the motion to dismiss.

New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." Carefirst, 334 F.3d at 396.

"A court's exercise of personal jurisdiction over a non-resident defendant is consistent with due process if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" AESP, Inc. v. Signamax, LLC, 29 F. Supp. 3d 683, 689 (E.D. Va. 2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. Plaintiff in this case seeks to assert specific personal jurisdiction. Doc. 51 at 6. In determining the existence of specific jurisdiction, the Fourth Circuit generally considers:

> (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

Carefirst, 334 F.3d at 396 (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002).

Plaintiff invokes an alternative personal jurisdiction test based on the "stream of commerce" theory of personal jurisdiction. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980). Under this test, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Id. Subsequent divided Courts have disagreed as to how much this test requires. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S.

102 (1987); see also J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011). One position, held by Justice O'Connor and joined by three others, requires not only the knowledge or expectation that a product placed into the stream of commerce could wind up in the forum state, but also some evidence that the placement was "purposefully directed at the forum State." Asahi, 480 U.S. at 112. By contrast, an opinion written by Justice Brennan and joined by three others asserts that the Due Process Clause does not require a showing of purposefulness for personal jurisdiction to attach. See id. at 117 ("As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.").

The Fourth Circuit has not taken a definitive position on this question. On the one hand, the Court's opinion in Lesnick v. Hollingsworth & Vose, Co., 35 F.3d 939 (4th Cir. 1994), appears to favor Justice O'Connor's approach. See AESP, 29 F. Supp. 3d at 690. In Lesnick, the Court concluded that "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." Lesnick, 35 F.3d at 945. However, the Lesnick Court's approach was directly motivated by federalism concerns and the Court's desire to preserve the sovereignty of individual States. See id. ("To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism."). Thus, it is unclear to what extent the Fourth Circuit's analysis would change in the case of a non-U.S. defendant.

A number of more recent cases have adopted something closer to Justice Brennan's interpretation of minimum contacts. These cases offer what might be called a "national contacts" or "national market" test, whereby a defendant who places its products into the stream

of commerce with the intent to serve the United States as a whole is subject to personal jurisdiction in any individual State. See, e.g., Ainsworth v. Moffett Engineering, Ltd., 716 F.3d 174 (5th Cir. 2013) (holding that non-U.S. defendant was subject to personal jurisdiction in Mississippi because defendant entered into distribution agreement that defined sales territory "as the entire United States," id. at 177); Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co., Ltd., No. 4:13cv01043, 2014 WL 2986685, at *9 (E.D. Mo. July 1, 2014) ("[Defendants'] decisions to sell their products to nationwide retailers with outlets in Missouri provide strong evidence of their intent and purpose to reach Missouri customers."); Estes v. Midwest Products, Inc., 24 F. Supp. 2d 621 (S.D. W.Va. 1998) (finding personal jurisdiction over defendant who sold most of its products through national retailers Wal-Mart and Kmart). As one court explained:

> Manufacturers of finished products which purposely and intentionally direct them into the state through national retailers that combine the functions of advertiser, wholesaler, distributor, and retailer must expect to be haled into court in West Virginia when one of their products is implicated in the wrongful injury of a party here. This is so because a manufacturer that sells its products through such a national retailer completely manifests its direct purpose and intent to sell its product in this sovereign state.

Estes, 24 F. Supp. 2d at 632.

"Under this 'relatively expansive' theory, only 'mere foreseeability' that a defendant might be haled into court because it purposely availed itself of the benefits of the forum state is required." Jackson v. Tanfolgio Giuseppe, S.R.L., 615 F.3d 579, 585 (5th Cir. 2010) (citing Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 381 n.8 (5th Cir. 2002)).

Finding this line of cases persuasive, this Court adopts the "national contacts" test for personal jurisdiction in the following analysis.

## III. ANALYSIS

Plaintiff asserts that "this Court can not [sic] seriously entertain the idea that Placetech did not know or intend that its products would be distributed to customers and users in Virginia," because Placetech "sells and markets to major retailers with presence in every state, including Virginia." Doc. 51 at 10. Placetech's importers include major American retailers such as Lowe's and the Home Shopping Network. See id. Exs. C, F. Placetech's website indicates that the company does business with numerous other American retailers as well, including Wal-Mart, Target, The Home Depot, Sears, and Menards, and that 45% of its business comes from the United States. See id. Ex. N.

Plaintiff has alleged that Defendants Placetech and Protrend Group placed their products, including the product at issue in this case, into the stream of commerce, with the knowledge and intent that those products would be sold through national retailers to consumers throughout the United States. It is clear from these alleged facts that Placetech and Protrend Group delivered their products "into the stream of commerce with the expectation that [the products] would be purchased by or used by consumers in [Virginia.]" Ainsworth, 716 F.3d at 177 (quoting Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987)). Accordingly, the Court **FINDS** that the Court has personal jurisdiction over Defendants Placetech and Protrend Group.

## IV. CONCLUSION

For the reasons set forth herein, the Court **FINDS** that it has personal jurisdiction in this matter over Defendants Placetech and Protrend Group. Thus, the Court **DENIES** Defendants Placetech's and Protrend Group's Motions to Dismiss as to Plaintiff's Amended Complaint, Docs. 39, 42, and Hubert's Crossclaim, Docs. 47, 49.

The Clerk is **REQUESTED** to deliver electronically a copy of this Order to all counsel

of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
September 28, 2017